## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| ADDAM FINK, Individually and for Others Similarly Situated, | **Case No.** _____ |
| | Jury Trial Demanded |
| v. | Rule 23 Class Action |
| KANAAN COMMUNICATIONS, LLC | FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Addam Fink (Fink) brings this class collective action to recover unpaid wages and other damages from Kanaan Communications, LLC (Kanaan).

2.      Kanaan employed Fink as one of its Hourly Employees (defined below), including in Pennsylvania.

3.      Fink and the other Hourly Employees regularly work more than 40 hours a week.

4.      But Kanaan does not pay them for all the hours they work.

5.      Instead, Kanaan requires Fink and the other Hourly Employees to work "off the clock" without pay.

6.      Specifically, Kanaan prohibits Fink and the other Hourly Employees from clocking in for their shifts until they arrive at their first assigned job site and Kanaan requires Fink and the other Hourly Employees to clock out when they leave their last assigned job site (Kanaan's "ticket to ticket policy").

7.      But to meet Kanaan's strict productivity requirements, Fink and the other Hourly Employees are forced to perform their regular job duties "off the clock" before arriving to their first assigned job site and after leaving their last assigned job site.

1

8.      Fink and the other Hourly Employees are thus not paid for the time they spend performing this pre- and post-ticket work "off the clock."

9.      Further, Kanaan does not pay Fink and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

10.     Instead, Kanaan pays Fink and the other Hourly Employees non-discretionary bonuses that it fails to include in these employees' regular rates of pay for overtime purposes (Kanaan's "bonus pay scheme").

11.     Kanaan's ticket to ticket policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act by depriving Fink and the other Hourly Employees of overtime wages for all overtime hours worked.

12.     Likewise, Kanaan's ticket to ticket policy and bonus pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Fink and the other Hourly Employees of earned overtime wages on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.     This Court has general personal jurisdiction over Kanaan because it is a limited liability company registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

16.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in and around Allegheny County, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

17.     Specifically, Kanaan employed Fink and other Hourly Employees pursuant to its ticket to ticket policy and bonus pay scheme in and around Allegheny County.

## PARTIES

18.     Fink worked for Kanaan as a power supply technician and coax splicer from approximately July 2022 until approximately April 2024.

19.     Throughout his employment, Kanaan subjected Fink to its ticket to ticket policy and bonus pay scheme.

20.     Fink brings this class and collective action on behalf of himself and other similarly situated Kanaan employees who were subject to Kanaan's ticket to ticket policy and/or bonus pay scheme.

21.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Kanaan employees who were subject to Kanaan's ticket to ticket policy at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

22.     The putative Pennsylvania class of similarly situated employees is defined as:

> **All hourly Kanaan employees who worked in, or were based out of, Pennsylvania[1] during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence;

23.     The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

24.     Kanaan is a Delaware limited liability company headquartered in Canton, Michigan.

25.     Kanaan may be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, PA 17101.**

**FLSA COVERAGE**

26.     At all relevant times, Kanaan was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, Kanaan was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Kanaan was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because Kanaan has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials, such as cellphones, computers, vehicles, tools, and personal protective equipment, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29.     At all relevant times, Kanaan has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, Fink and the other Hourly Employees were Kanaan's covered "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, Fink and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

---

and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

### FACTS

32.     Kanaan touts that it "provides a wide range of services to the nation's largest telecommunications providers. Offering full-service turnkey solutions, Kanaan Communications can take on all the heavy lifting required to take telecom projects from inception through final sign-off, without compromising on safety, quality, and production."[2]

33.     To meet its business objectives, Kanaan hires workers like Fink and the other Hourly Employees to implement telecom projects on behalf of its clients.

34.     Fink and the other Hourly Employees regularly work more than 40 hours a workweek.

35.     But Kanaan does not pay Fink and the other Hourly Employees for all their hours worked.

36.     Instead, Kanaan subjects Fink and the other Hourly Employees to its ticket to ticket policy, which forces these employees to perform compensable work "off the clock" before clocking in and after clocking out for their shifts.

37.     While exact job duties and locations may differ, Fink and the other Hourly Employees are subject to Kanaan's same or similar ticket to ticket policy, while performing similar work.

38.     For example, Fink worked for Kanaan as a power supply technician and coax splicer in Ohio, West Virginia, Maryland, and Pennsylvania from approximately July 2022 through April 2024.

39.     Fink was Kanaan's hourly employee.

40.     Kanaan agreed to pay Fink approximately $22 per hour plus overtime wages for hours in excess of 40 in a workweek.

41.     As a power supply technician, Fink's primary job duties included obtaining necessary and appropriate supplies (cable, batteries, etc.) from Kanaan's facilities, installing and maintaining power supply units and installing batteries on fiber optic cable systems and as a coax splicer, Fink

---

[2] https://www.kanaancomm.com/ (last visited June 6, 2025).

additionally spliced new fiber optic lines, and transporting used equipment, such as batteries, back to Kanaan's facilities for disposal.

42.    Throughout his employment, Kanaan required Fink to report his time worked to Kanaan for approval through its designated timekeeping system.

43.    Fink regularly worked more than 40 hours a workweek.

44.    Indeed, Fink typically worked approximately 10 hours a day and 5 days a week (50 hours a workweek) "on the clock."

45.    But throughout his employment, Kanaan subjected Fink to its ticket to ticket policy.

46.    Specifically, Kanaan prohibited Fink from clocking in until he arrived at his first assigned job site and required him to clock out when he left his last assigned job site.

47.    But Kanaan also required Fink to perform compensable work "off the clock" (without compensation) before arriving to his first job site and after leaving his last job site.

48.    Specifically, to meet Kanaan's strict productivity requirements, Fink was forced to route plan, attend meetings, make/take calls from Kanaan's management and clients, load equipment (tools, batteries, cable, etc.) into his company-issued vehicle, and drive to Kanaan's facility to pick up necessary supplies, "off the clock," and without pay.

49.    Indeed, 2 to 3 times a week, prior to arriving at his first job site Kanaan required Fink to drive to its facility to replenish the supplies he needed to perform his job duties each such as batteries and tools, load these supplies into his vehicle, and then drive to his first job location from Kanaan's facility, "off the clock."

50.    Collecting the supplies, loading the supplies into his vehicle, and then driving to his first job site took at least 1.5 hours each day.

51.     Likewise, after clocking out upon completing his last assigned ticket, Fink was forced to drive to Kanaan's facility to pick up/drop off necessary supplies, route plan, and/or make/take calls from Kanaan's clients, "off the clock" and without pay.

52.     This pre- and post-ticket "off the clock" work took Fink approximately 1 to 3 hours a day (or 5 to 15 hours per workweek).

53.     But under Kanaan's ticket to ticket policy, Kanaan did not pay Fink for his mandatory and integral and indispensable pre- and post-ticket "off the clock" work.

54.     So, rather than receiving overtime pay for all his hours worked over 40 in a workweek, under its ticket to ticket policy, Kanaan only paid Fink for the time he worked between his arrival at his first assigned ticket and his departure from his last assigned ticket.

55.     Kanaan subjects the other Hourly Employees according to this same ticket to ticket policy.

56.     Like Fink, Kanaan pays the other Hourly Employees by the hour.

57.     Like Fink, Kanaan requires the other Hourly Employees to report their hours worked for approval via Kanaan's timekeeping system.

58.     Kanaan's records show that, like Fink, the other Hourly Employees regularly work more than 40 hours a workweek.

59.     Indeed, like Fink, the other Hourly Employees typically work approximately 10 hours a day and 5 days a week (50 hours a workweek) "on the clock."

60.     Kanaan subjects the other Hourly Employees to the same policies, procedures, and strict operational and productivity requirements that it imposed on Fink.

61.     Kanaan requires Fink and the other Hourly Employees to complete their job duties in a timely manner per Kanaan's company-wide policy.

62.    Kanaan uniformly pressures and expects Fink and the other Hourly Employees to complete as many jobs as possible.

63.    And Kanaan closely supervises and tracks Fink's and the other Hourly Employees' productivity through its timekeeping system to ensure they comply with Kanaan's uniform expectations and complete their heavy workloads.

64.    In addition, Kanaan utilizes GPS trackers installed on the company-issued vehicles Fink and the other Hourly Employees drive to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with Kanaan's productivity and operational requirements.

65.    But, like Fink, Kanaan does not pay its other Hourly Employees for all their hours worked.

66.    Indeed, like Fink, the other Hourly Employees are forced to perform compensable work "off the clock" before and after their shifts, without pay, to complete their heavy workloads in satisfaction of Kanaan's productivity requirements.

67.    Indeed, Kanaan subjects its other Hourly Employees to its ticket to ticket policy imposed on Fink.

68.    Specifically, Kanaan prohibits its Hourly Employees from clocking in for their shifts until they arrive at their first job site and requires them to clock out for their shifts when they leave their last job site.

69.    But like Fink, Kanaan also requires its other Hourly Employees to perform compensable work "off the clock" before arriving at the first job site and after leaving the last job site.

70.    The "off the clock" work Fink and the other Hourly Employees perform before they arrive at their first assigned ticket and after they leave their last assigned ticket is similar if not the same.

71. Specifically, the other Hourly Employees are forced to route plan, make/take calls from Kanaan's management and clients, load their equipment into their company-issued vehicle, drive to Kanaan's facility to pick up necessary supplies, and/or drive to their first assigned ticket "off the clock" and without pay.

72. Likewise, after clocking out for their shifts at their last assigned ticket, the other Hourly Employees are forced to drive to Kanaan's facility to pick up/drop off necessary supplies, route plan, and/or make/take calls from Kanaan's management and clients "off the clock" and without pay

73. And like Fink, the other Hourly Employees spend approximately 1 to 3 hours a day (5 to 15 hours per workweek) performing this compensable pre- and post-ticket work "off the clock" without pay.

74. Kanaan controls Fink's and the other Hourly Employees' pre- and post-ticket "off the clock" work, and this "off the clock" work is undertaken primarily for the benefit of Kanaan's business of providing telecom construction, maintenance, and repair services to its clients.

75. Further, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to the principal work (or *is* their principal work) Fink and the other Hourly Employees perform as Kanaan's Hourly Employees.

76. Indeed, Fink and the other Hourly Employees cannot provide telecom construction, maintenance, and/or repair services to Kanaan's clients in accordance with Kanaan's strict productivity and operational requirements unless they perform this pre- and post-shift "off the clock" work.

77. In other words, Fink's and the other Hourly Employees' mandatory pre- and post-ticket "off the clock" work is a necessary and fundamental requirement of their jobs as Kanaan employees.

78.     Kanaan could not eliminate this pre- and post-shift "off the clock" work without impairing Fink's and the other Hourly Employees' ability to perform their job duties.

79.     Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Fink's and the other Hourly Employees' work.

80.     Thus, Fink and the other Hourly Employees routinely perform this mandatory pre- and post-shift "off the clock" work for Kanaan's – not their own – predominant benefit.

81.     And Kanaan knows Fink and its other Hourly Employees perform this compensable pre- and post-ticket work "off the clock" because Kanaan requires them to do so.

82.     In fact, Kanaan closely monitors and tracks Fink and the other Hourly Employees' work time and locations via its company-wide timekeeping system and vehicle GPS trackers to ensure they meet Kanaan's strict productivity requirements.

83.     Specifically, using timecard details tracked by Kanaan's timekeeping system and GPS data, Kanaan can easily determine whether Fink and the other Hourly Employees are working "off the clock."

84.     And Fink and the other Hourly Employees complained to Kanaan about being forced to work "off the clock" to complete their heavy workloads in satisfaction of Kanaan's strict productivity and operational requirements.

85.     But Kanaan fails to exercise its duty as Fink's and the other Hourly Employees' employer to ensure these employees are not performing work that Kanaan does not want performed "off the clock" before they arrive at their first job site and after they leave their last job site.

86.     Thus, Kanaan requested, suffered, or permitted Fink and the other Hourly Employees to work "off the clock," without compensation before they arrive at their first job site and after they leave their last job site.

87.     Fink and the other Hourly Employees are thus denied overtime pay for the time they spend performing compensable work "off the clock", in willful violation of the FLSA and Pennsylvania law.

88.     Additionally, Kanaan pays Fink and the other Hourly Employees under its bonus pay scheme.

89.     Specifically, Kanaan agreed to pay, and indeed pays, Fink and the other Hourly Employees non-discretionary bonuses, including sign on bonuses, that it fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

90.     Thus, under its bonus pay scheme, Kanaan does not pay Fink and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

91.     Like Fink, the other Hourly Employees are victimized by Kanaan's ticket to ticket policy and bonus pay scheme.

92.     Other Hourly Employees worked with Fink and indicated they were paid in the same manner, performed similar work, and were subject to Kanaan's same or similar ticket to ticket policy and bonus pay scheme.

93.     Based on his experience with Kanaan, Fink is aware Kanaan's ticket to ticket policy and bonus pay scheme were imposed on other Hourly Employees.

94.     The Hourly Employees are similarly situated in the most relevant respects.

95.     Even if their specific job titles or locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages for all hours worked in excess of 40 in a workweek.

96.    Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

97.    Rather, the Hourly Employees are held together by Kanaan's ticket to ticket policy and bonus pay scheme, which systematically deprive Fink and the other Hourly Employees of earned wages for all hours worked, including overtime wages for all hours worked in excess of 40 in a workweek.

98.    Kanaan's failure to pay earned wages as required by the FLSA and PMWA results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Hourly Employees.

99.    Kanaan's records reflect the number of hours the Hourly Employees recorded they worked each workweek.

100.    Kanaan's records also show the number of hours the Hourly Employees *actually* worked each workweek.

101.    Kanaan's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

102.    The back wages owed to Fink and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

103.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Kanaan's records, and there is no detraction from the common nucleus of liability facts.

104.    Therefore, the issue of damages does not preclude class or collective treatment.

105.    Fink's experiences are therefore typical of the experiences of the other Hourly Employees.

106.    Fink has no interest contrary to, or in conflict with, the other Hourly Employees that would preclude class or collective treatment.

107.    Like each Hourly Employee, Fink has an interest in obtaining the unpaid wages owed to them under federal and Pennsylvania law.

108.    Fink and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

109.    Fink retained counsel with significant experience in handling complex class and collective action litigation.

110.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

111.    Absent this class and collective action, many Hourly Employees likely will not obtain redress for their injuries, and Kanaan will reap the unjust benefits of violating the FLSA and Pennsylvania law.

112.    Further, even if some of the Hourly Employees could afford individual litigation against Kanaan, it would be unduly burdensome to the judicial system.

113.    Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Kanaan.

114.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

115.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

116.    Among the common questions of law and fact are:

a.      Whether Kanaan engaged in a policy and practice of prohibiting its Hourly Employees from clocking in for their shifts until they arrived at their first assigned job site;

b.      Whether Kanaan engaged in a policy and practice of requiring its Hourly Employees to clock out for their shifts once they left their last assigned job site;

c.      Whether Kanaan knew, or had reason to know, the Hourly Employees were requested, suffered, permitted, or allowed to work "off the clock" before they arrived at their first assigned job site and after they left their last assigned job site;

d.      Whether Kanaan failed to pay its Hourly Employees overtime wages for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and PMWA;

e.      Whether Kanaan paid the Hourly Employees non-discretionary bonuses;

f.      Whether Kanaan failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

g.      Whether Kanaan's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked, including those worked "off the clock," was made in good faith;

h.      Whether Kanaan's decision to not pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," was made in good faith; and

i.    Whether Kanaan's violations were willful.

117.    As part of its regular business practices, Kanaan intentionally, willfully, and repeatedly violated the FLSA with respect to Fink and the other Hourly Employees.

118.    Kanaan's ticket to ticket policy and bonus pay scheme deprives Fink and the other Hourly Employees of earned wages for all hours worked, including overtime wages for all hours worked after 40 in a workweek.

119.    There are many similarly situated Hourly Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

120.    The Hourly Employees are known to Kanaan and can be readily identified through Kanaan's business and personnel records.

### KANAAN'S VIOLATIONS WERE WILLFUL

121.    Kanaan knew it was subject to the FLSA's and PMWA's overtime provisions.

122.    Kanaan knew the FLSA and PMWA required it to pay non-exempt employees, including Fink and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

123.    Kanaan knew it was subject to the WPCL.

124.    Kanaan knew the WPCL required it to pay employees, including its Hourly Employees, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

125.    Kanaan knew Fink and the other Hourly Employees were non-exempt employees entitled to overtime pay.

126.    Kanaan knew it paid Fink and the other Hourly Employees by the hour.

127.    Kanaan knew Fink and each Hourly Utility Technician and Locator worked over 40 hours in at least one workweek during relevant period(s) because Kanaan required them to record their hours worked using its timekeeping system.

128.    Kanaan knew the FLSA and PMWA required it to pay employees, including Fink and the other Hourly Employees, for all hours they performed compensable work.

129.    Kanaan knew that, as Fink's and the other Hourly Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Kanaan did not want performed.

130.    Kanaan knew it prohibited Fink and the other Hourly Employees from clocking in for their shifts until they arrived at their first assigned job site.

131.    Nonetheless, Kanaan knew Fink and the other Hourly Employees performed compensable work "off the clock" before they arrived at their first assigned job site.

132.    Likewise, Kanaan knew it required Fink and the other Hourly Employees to clock out for their shifts when they left their last assigned job site.

133.    Nonetheless, Kanaan knew Fink and the other Hourly Employees performed compensable work "off the clock" after they left their last assigned job site.

134.    Thus, Kanaan knew it requested, suffered, permitted, or allowed Fink and the other Hourly Employees to work "off the clock" before they arrived at their first assigned job site and after they left their last assigned job site.

135.    Kanaan knew it controlled Fink's and the other Hourly Employees' pre- and post-shift "off the clock" work.

136.    Kanaan knew Fink's and the other Hourly Employees' pre- and post-shift "off the clock" work was undertaken for Kanaan's predominant benefit.

137.    Kanaan knew Fink's and the other Hourly Employees' pre- and post-shift "off the clock" work was necessary to the principal work they performed as Kanaan Hourly Employees.

138.    Kanaan knew Fink's and the other Hourly Employees' pre- and post-shift "off the clock" work was integral and indispensable to their work as Kanaan Hourly Employees.

139.    Thus, Kanaan knew, should have known, or recklessly disregarded whether Fink and the other Hourly Employees performed compensable work "off the clock" before they arrived at their first assigned job site and after they left their last assigned job site.

140.    Nonetheless, Kanaan did not pay Fink and the other Hourly Employees for the compensable work they performed "off the clock" before they arrived at their first assigned job site and after they left their last assigned job site.

141.    Thus, Kanaan knew, should have known, or recklessly disregarded whether it failed to pay Fink and the other Hourly Employees for all the hours they performed compensable work.

142.    Kanaan's decision to prohibit Fink and the other Hourly Employees from clocking in for their shifts until they arrived at their first assigned job site was neither reasonable, nor was it made in good faith.

143.    Kanaan's decision to require Fink and the other Hourly Employees to clock out for their shifts when they left their last assigned job site was neither reasonable, nor was it made in good faith.

144.    Kanaan knew it paid Fink and the other Hourly Employees non-discretionary bonuses.

145.    Kanaan knew these non-discretionary bonuses were required to be, but were not included in Fink's and the other Hourly Employees' regular rates of pay for overtime purposes.

146.    Kanaan's failure to pay Fink and the other Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was its decision made in good faith.

147.    Likewise, Kanaan's failure to pay Fink and the other Hourly Employees all their earned wages for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages for all hours worked made in good faith nor was it the result of a *bona fide* dispute.

148.    Kanaan knowingly, willfully, and/or in reckless disregard carried out its ticket to ticket policy and bonus pay scheme that deprived Fink and the other Hourly Employees of earned wages for all hours worked, including overtime wages for all hours worked after 40 in a workweek, in violation of the FLSA and PMWA.

149.    Kanaan knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and PMWA.

## <u>COUNT I</u>
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

150.    Fink brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

151.    Kanaan violated, and is violating, the FLSA by employing non-exempt employees (Fink and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek, including hours worked "off the clock."

152.    Kanaan's unlawful conduct harmed Fink and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

153.    Accordingly, Kanaan owes Fink and the other FLSA Collective Members the difference between the overtime wages actually paid and the overtime wages actually earned.

154.    Because Kanaan knew or showed reckless disregard for whether its policies violated the FLSA, Kanaan owes these wages for at least the past 3 years.

155.     Kanaan is also liable to Fink and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

156.     Finally, Fink and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>COUNT II</u>
**FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA**
**(PENNSYLVANIA CLASS)**

157.     Fink brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

158.     Kanaan's conduct violated the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

159.     At all relevant times, Kanaan was subject to the PMWA because Kanaan was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

160.     At all relevant times, Kanaan employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

161.     The PMWA requires employers, like Kanaan, to pay non-exempt employees, including Fink and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

162.     Kanaan violated, and is violating, the PMWA by employing non-exempt employees (Fink and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, including hours worked "off the clock." *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

163.     Kanaan's unlawful conduct harmed Fink and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

164.    Accordingly, Kanaan owes Fink and the other Pennsylvania Class Members the difference between the rate actually paid and the required overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

165.    Finally, Fink and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

<u>COUNT III</u>
**FAILURE TO PAY EARNED WAGES UNDER THE WPCL**
**(PENNSYLVANIA CLASS)**

166.    Fink brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

167.    Kanaan's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

168.    At all relevant times, Kanaan was subject to the WPCL because Kanaan was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

169.    At all relevant times, Kanaan employed Fink and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

170.    The WPCL requires employers, like Kanaan, to pay employees, including Fink and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

171.    Kanaan violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

172.    Fink's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

173.    Kanaan's unlawful conduct harmed Fink and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

174.    Kanaan's failure to pay Fink and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

175.    Rather, Kanaan knowingly failed to pay earned wages to Fink and the other Pennsylvania Class Members.

176.    Accordingly, Kanaan owes Fink and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

177.    Kanaan also owes Fink and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid earned wages. *See* 43 PA. STAT. § 260.10.

178.    Finally, Fink and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

179.    Fink demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Fink, individually and on behalf of the other Hourly Employees, seeks the following relief:

        a.      An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

        b.      An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

    c.        An Order appointing Fink and his counsel to represent the interests of the Hourly Employees;

    d.        An Order finding Kanaan liable to Fink and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

    e.        An Order finding Kanaan liable to Fink and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

    f.        An Order finding Kanaan liable to Fink and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

    g.        A Judgment against Kanaan awarding Fink and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

    h.        An Order awarding attorney's fees, costs, and expenses;

    i.        Pre- and post-judgment interest at the highest applicable rates; and

    j.        Such other and further relief as may be necessary and appropriate.

Dated: June 9, 2025.                          Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: /s/Michael A. Josephson
Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com


Richard J. (Rex) Burch, Esquire
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR FINK AND
THE HOURLY EMPLOYEES**